[No. B004275. Second Dist., Div. Four. Oct. 17, 1984.]

C & H FOODS CO. et al., Plaintiffs and Appellants, v.
HARTFORD INSURANCE COMPANY, Defendant and Respondent.

1058

**COUNSEL**

David S. Sperber for Plaintiffs and Appellants.

Overton, Lyman & Prince and Jon P. Kardassakis for Defendant and Respondent.

**OPINION**

**McCLOSKY, J.**—Plaintiffs C & H Foods Co. (C & H), a division of Kwik-Serv Foods, Inc. (Kwik-Serv), Frank Cottle (Cottle) and Fred W. Harris (Harris) purport to "appeal from the January 5, 1983 Superior Court's Order to the effect that a portion of the First Amended Complaint be sustained without leave to amend, and from the March 24, 1983 Superior Court's Order to the effect that the First and Second Causes of Action of the Second Amended Complaint be dismissed without leave to amend." ██ An order sustaining a demurrer is a nonappealable order. We treat the notice of appeal as taken from the order (judgment) of dismissal entered in favor of respondent The Hartford Fire Insurance Company (Hartford) on March 24, 1983. In connection therewith, we review the propriety of both orders of the trial court sustaining the demurrers to the portions of the first and second amended complaints.

All plaintiffs also sued defendants Hayward Mason and Rolapp Insurance Associates and certain Does for "insurance malpractice" but none of those defendants are properly parties to this appeal as the judgment was solely in favor of Hartford.

Plaintiffs contend: (1) A private statute of limitations in an insurance policy does not bar an insured when the insured is unaware of the private statute of limitations; (2) even if the private statute of limitations was a bar, it was waived by defendant Hartford; (3) the individual plaintiffs state a cause of action for bad faith refusal to pay an insurance benefit since there was a close nexus between the individuals and the corporate insured, and the corporate plaintiff states a cause of action for bad faith refusal to pay benefits; (4) the complaint affords a basis to award punitive damages.

## FACTS

In their first and second amended complaints plaintiffs alleged that C & H bought eight marine insurance policies covering the shipment of 6,437 pails of cured beef. Of these, 4,154 pails of beef were delivered to Pago Pago, American Samoa between September 1980 and February 1, 1981, in a spoiled and unusable condition. The plaintiffs attached to the respective complaints a copy of a two-page marine insurance policy insuring the pails of beef "against all risks of physical loss or damage from any external cause . . . but . . . warranted free from any claims arising out of the inherent vice of goods insured . . . ." In the two complaints, all of the plaintiffs sued for declaratory relief, bad faith and refusal to pay benefits. The individual plaintiffs additionally sued for emotional distress. In the complaints it was further alleged that "[b]uried within the reverse side of each of the aforesaid policies, in unreasonably small type, was the following provision: '12. No suit or action on this policy shall be sustainable in any court of law or Equity unless the Insured shall have complied in full with all the terms and conditions of this insurance, nor unless same shall be commenced within twelve (12) months next after the happening of the loss, . . .'"

Nevertheless, in the complaints it was alleged that defendants did not advise plaintiffs either orally or in writing of "the shortened statute of limitations," of which plaintiffs were unaware, but instead represented to plaintiffs "that defendants were not of the practice of relying upon technicalities of any kind in connection with the handling of claims by insureds, and in connection with the handling of a claim, defendants would look to the merits of the claim." They alleged further that "defendants owed to plaintiff a fiduciary responsibility, and pursuant to that fiduciary relationship, defendants are precluded from relying upon a shortened statute of limitations absent a complete and full disclosure of it to plaintiff."

On or about February 16, 1982, some 12 months after the last loss, plaintiffs first notified Hartford of the aforesaid loss and made demand upon it for $169,489.88, the amount of the loss. Defendants thereafter denied the claim saying among other things: "As I have told you, in most instances in my experience, technical provisions of a policy are not enforced by an insurance company if their basic position has not been jeopardized. In the case of the last claim [the claim on the eighth policy] where there was a potential of recovery from the steamship line, because of the passage of time, The Hartford is blocked out and therefore their position was seriously prejudiced. In the case of the other claims [policies one through seven] where there was an inadequate pail used, even though you have all-risk insurance, this type of situation does not fall under that area of coverage. It is presumed in any type of a cargo policy the container used for the

shipment must be adequate to the job and when it isn't, this is not subject to insurance."

On or about March 23, 1982, defendants wrote C & H as follows: "Our problems with the claims at this late date are:

"1. Late notice—no opportunity to survey or inspect damages, or develop the facts as to cause.

"2. In the event of transit damages—any claim against the responsible carrier is time barred—T/B [time barred] date is one year from date delivered.

"3. As the major cause of damages appears to be the packing—pails— the shipments were apparently not sufficiently packaged to withstand the anticipated conditions of the voyage to Pago Pago. The insurance policy also contains a one year time for suit clause which had expired before receipt of notice. In view of the foregoing, we have no alternative but to decline liability for these claims under [the policies in question]."

Plaintiffs alleged on information and belief that their late notice caused no prejudice to defendants as "even timely notice would not have given [Hartford] an opportunity to survey or inspect damages, since the goods were ordered immediately destroyed by the Health Department of American Samoa. The goods were destoryed [sic], and the pails within which the goods were shipped were buried. A representative sample of the aforesaid pails has been recovered."

They also alleged on information and belief "that the damage was not the result of transit damages and defendants have not been prejudiced by any claim not being made to the shipper, since there is no claim as against the shipper." "That the cause of damages was the result of a manufacturer's defect in the pails, and that defendants have not been prejudiced in any way as to their rights as against the manufacturer of the pails."

Plaintiffs Cottle and Harris alleged that they were each 50 percent owners of C & H and that it was at their behest that the insurance policies were bought to guarantee the continued operation of C & H. They further alleged that the unconditional denial of liability by Hartford to C & H was intentional, wrongful, reckless, malicious, oppressive, fraudulent in nature, and done in bad faith with conscious disregard of plaintiffs' rights and caused Cottle and Harris emotional distress for which they sought compensatory and punitive damages.

All plaintiffs also alleged that Hartford, acting in bad faith, pursuant to a plan and scheme to act in bad faith refused to pay the benefits to them where there was no prejudice to Hartford. They alleged that it was Hartford's normal practice not to invoke the statute of limitations when there had been no prejudice to it by an insured's failure to file an "early" claim. They also alleged that Hartford failed to adopt and implement reasonable standards for the prompt investigation and processing and settlements of claims under plaintiffs' policies of insurance.

## Discussion

### I

■ A general demurrer admits all material facts that are properly pleaded. Generally, material facts alleged in the complaint are treated as true for the purpose of ruling on the demurrer. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].) Also taken as true are facts that may be implied or inferred from those expressly alleged. (*Harvey* v. *City of Holtville* (1969) 271 Cal.App.2d 816 [76 Cal.Rptr. 795]; *Miranda* v. *Great Southwest Fire Ins. Co.* (1975) 50 Cal.App.3d 492 [123 Cal.Rptr. 357], disapproved in part on other grounds in *Wood* v. *Elling Corp.* (1977) 20 Cal.3d 353, 362, fn. 7 [142 Cal.Rptr. 696, 572 P.2d 755].) However, contentions, deductions or conclusions of fact or law alleged in the complaint are not considered in judging its sufficiency. (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566.) In short, the ruling on a demurrer determines a legal issue on the basis of assumed facts, i.e., those properly alleged in the complaint, regardless of whether they ultimately prove to be true. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 800, p. 2413-2414.)

■ In ruling on a demurrer, the trial court is required to construe the complaint liberally with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Cameron* v. *Wernick* (1967) 251 Cal.App.2d 890 [60 Cal.Rptr. 102].) ■ A general demurrer will not be sustained unless the complaint liberally construed fails to state a cause of action on any theory. (See *Brousseau* v. *Jarrett* (1977) 73 Cal.App.3d 864 [141 Cal.Rptr. 200].) Doubt in the complaint may be resolved against plaintiff and facts not alleged are presumed not to exist. (*Melikian* v. *Truck Ins. Exchange* (1955) 133 Cal.App.2d 113 [283 Cal.Rptr. 269].) ■ Sustaining a general demurrer without leave to amend is not an abuse of discretion if it appears from the complaint that under applicable substantive law there is no reasonable probability that the defect can be cured by amendment. (*Vater* v. *County of Glenn* (1958) 49 Cal.2d 815, 821 [323 P.2d 85]; *Sackett* v. *Wyatt* (1973) 32 Cal.App.3d 592, 603 [108 Cal.Rptr. 219].)

Under these salutary principles, we consider plaintiffs' contentions.

## II

Plaintiffs first contend that the private "statute of limitations does not bar plaintiffs' causes of action."

Each of the policies of insurance contained a provision to the effect that "[n]o suit or action on this policy shall be sustainable in any court of law or Equity unless the Insured shall have complied in full with all the terms and conditions of this insurance, nor unless same shall be commenced within twelve (12) months next after the happening of the loss, . . ."

The trial court sustained a demurrer without leave to amend and noted that there was a "one year private statute of limitations" which "seems reasonable."

Plaintiffs urge that "this private statute of limitations was not one which was ever made known to the plaintiff." They also urge that defendant did not ever "advise plaintiff in writing or orally of the shortened statute of limitations, and indeed at all times defendant represented to plaintiffs that defendant was not of the practice of relying upon technicalities. Additionally, at all times, plaintiff was unaware of the shortened private statute of limitations, and plaintiff believed the statute of limitations as against plaintiff was the same statute of limitations as against any other entity on a written agreement."

A "representative policy" containing the language which constitutes the shortened time-for-commencement-of-suit provision is attached as an exhibit and incorporated into the first and second amended complaints. Plaintiffs allege that that provision "is buried in small type in an obscure corner on the backside of the insurance policy." The record furnished us, however, discloses only a short policy with a single front and a single reverse side with the provision in question printed in the same size type as all of the other printed provisions of the policy except for the titles of some of its paragraphs and the witness clause. In short, the furnished provisions of the policy incorporated into the complaint as an exhibit are inconsistent with plaintiffs' conclusional allegations concerning them.

" '[W]here a conclusion is alleged and also the special facts from which the conclusion is drawn, if the special facts are inconsistent with and do not support the conclusion, the former control, and the sufficiency of the complaint is to be determined from the special facts pleaded.' " (*Denman* v. *City of Pasadena* (1929) 101 Cal.App. 769, 776-777 [282 P. 820], quot-

ing *Little* v. *Union Oil Co.* (1925) 73 Cal.App. 612, 619 [238 P. 1066]; *Stowe* v. *Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 422 [282 P.2d 890]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 338, p. 2006-2007.) Thus the language in the actual policy provision appearing in the exhibit to the complaints prevails over the inconsistent general conclusional allegations concerning that provision.

We next consider the validity of the clause itself. Such a provision has long been recognized as valid in California. As is stated in *Fageol T. & C. Co.* v. *Pacific Indemnity Co.* (1941) 18 Cal.2d 748, 753 [117 P.2d 669], of a policy provision requesting action to be commenced within 12 months after the happening of the loss: "Such a covenant shortening the period of limitations is a valid provision of an insurance contract and cannot be ignored with impunity as long as the limitation is not so unreasonable as to show imposition or undue advantage. One year was not an unfair period of limitation. (*Tebbets* v. *Fidelity and Casualty Co.* [1909] 155 Cal. 137 [99 P. 501]; *Beeson* v. *Schloss* [1920] 183 Cal. 618 [192 P. 292].)" (Accord. *Olds* v. *General Acc. Fire etc. Corp.* (1945) 67 Cal.App.2d 812, 817 [155 P.2d 676], disapproved in part on other grounds in *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 679, fn. 16 [79 Cal.Rptr. 106, 456 P.2d 674].) We accordingly hold that the shortened time-for-commencement-of-suit provision in the policies in question is valid and governs the time within which suit has to be commenced in this case. As the policies clearly so provided, and in view of the fact that plaintiffs do not deny that C & H was furnished the policies, we reject plaintiffs' claim that they were unaware of that provision.

Plaintiffs' reliance on *Ponder* v. *Blue Cross of Southern California* (1983) 145 Cal.App.3d 709 [193 Cal.Rptr. 632], is misplaced. That case is completely distinguishable. In *Ponder,* the appellate court reversed a summary judgment against Mrs. Ponder in favor of Blue Cross. After first having paid benefits to her for treatment of her temporomandibular joint syndrome, Blue Cross later denied payments to her for further treatment of that joint problem on the basis that the policy did not cover treatment for temporomandibular joint syndrome. The *Ponder* court based its decision on its conclusion that the exclusion therein did not meet the reasonable expectations of the insured at the time the policy was taken out because it was neither conspicuous nor plain and clear. The exclusion of coverage for temporomandibular joint syndrome was hidden under a provision entitled "Dental Care" and a subheading of "Dental Care Services" in small print on a page containing other exclusions and provisions in bold faced type and in capitals. The temporomandibular joint syndrome was not so printed. The cases are not comparable. As distinguished from the *Ponder* provision, the provision in the case at bench is clear, plain and easily understood.

## III

■ Plaintiffs next contend that "[t]he statute of limitations has been waived by defendant." This contention is without merit.

Plaintiffs admit that they gave no notice of the loss to defendant until more than one year after the losses, and the record shows that the action was not filed until over one year after the latest of the losses. In paragraph 11 of their complaint, they contend that defendant did not raise the statute of limitations in its oral denial of liability and thus waived that provision. This contention, however, ignores the fact that plaintiffs incorporated into the complaint as exhibit 2, defendant Hartford's denial letter of March 23, 1982, which lists, among other things, the fact that "[t]he insurance policy also contains a one year time for suit clause which had expired before receipt of notice."[1]

---

[1]That letter read in pertinent part as follows:

"Gentlemen:

"We confirm our March 3, 1982 phone conversation during which you advised a number of claims on shipments of cured beef to Samoa had been received from C & H Foods. On March 12, 1982 we received your March 9, 1982 letter with the following claims:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| "Polynesia | 7/13/80 | 15 | 192 out of | | 650 pails | $ | 5,760.00 |
| Austral Moon | 8/21/80 | 16 & 17 | 1,324 " | " | 2,208 " | | 39,720.00 |
| African Stars | 8/27/80 | 18 | 493 " | " | 700 " | | 15,939.00 |
| Polynesia | 9/7/80 | 21 | 700 " | " | 700 " | | 23,100.00 |
| African Stars | 9/18/80 | 19 | 700 " | " | 700 " | | 22,400.00 |
| Austral Rainbow | 9/23/80 | 20 | 347 " | " | 700 " | | 11,451.00 |
| Polynesia | 1/12/81 | 23 | 199 " | " | 752 " | | 5,472.50 |
| | | | | | TOTAL | | $123,842.50 |

"After review of the files and the general correspondence between Burns Philip South Sea Co., American Samoa Government, C & H Foods, Chamber of Commerce of American Samoa and U.S.D.A. Meat Inspector, Chief Lefao Su'e's confirmation that 3,746 pails of "Alofa Aja" brand cured salt beef was spoiled and dumped, we note Inspector Su'e states 'one of the major reasons resulting spoilage would be contributed by product packaging.'

"As Kwik Serv or C & H have filed claim on the Pail supplier and are negotiating with the Products Liability Carrier—Chubb & Company, its [sic] quite clear that there is a substantial question on the propriety of the pails supplied, as indicated by the damages at Pago Pago—pails crushed, split sides, buckled on sides, etc.

"Our problems with the claims at this late date are:

"1. Late notice—no opportunity to survey or inspect damages, or develop facts as to cause.

"2. In the event of transit damages—any claim against the responsible carrier is Time Barred—T/B date is one year from date delivered.

"3. As the major cause of damages appears to be the packing—pails—the shipments were apparently not sufficiently packaged to withstand the anticipated conditions of the voyage to Pago Pago.

"The insurance policy also contains a one year time for suit clause which had expired before receipt of notice.

"In view of the foregoing, we have no alternative but to decline liability for these claims under Open Policy 72 CO 037274 and original Marine Insurance policies 72 CO 037274/ 15, 16, 17, 18, 19, 20, 21 and 23.

"If there is documentary evidence to bring the claim within the terms and conditions of policy coverage, we shall be pleased to review the matter."

The facts specially pled by inclusion of that letter as an exhibit in the complaint demonstrate that the defendant Hartford based its timely denial of liability for the claims on, among other things, the failure of plaintiff C & H to commence suit within the one year time-for-suit provision of the policy. In the face of their pleading of those special facts, plaintiffs' allegation that Hartford did not raise plaintiffs' violation of the policy "statute of limitations" in its "oral denial" is without consequence or merit.

In their complaint plaintiffs also alleged in conclusional language, and on information and belief, that the late notice caused defendant no prejudice. They alleged that even had timely notice been given such timely notice "would not have given an opportunity to survey or inspect the damages [*sic*], since the goods were ordered immediately destroyed by the Health Department of American Samoa. The goods were destoryed [*sic*], and the pails within which the goods were shipped were buried. A representative sample of the aforesaid pails has been recovered."

Plaintiffs now urge on appeal that "[s]ince the goods were immediately destroyed, notice to defendants within 12 months would have made no difference for the purposes of defendant's investigation. In fact, if defendant wanted to conduct an investigation, they still could have, because plaintiff alleged that a pail was recovered."

The fact is that the complaint does not allege when the goods were destroyed or the pails buried or why no notice was given or no suit filed until more than one year after the last of the losses occurred. Nothing in the complaint negates Hartford's ability to have conducted a meaningful investigation had plaintiffs complied with the notice and time-for-commencement-of-suit provisions of the policies by giving timely notice before the goods were destroyed.

Further, the allegation by plaintiffs that a pail that was recovered was a "representative sample" of the condition of the buried or destroyed pails of beef is not an allegation of fact, the truth of which we must accept for the purpose of ruling on the general demurrer, but is a mere conclusion which is of no avail to plaintiffs. Nor were any facts pled showing that the recovered pail was, at the time of the first notice to Hartford, in the same condition that the pails containing the spoiled beef were in when the loss was discovered, or that the cause of the loss was discoverable from the recovered pail at the time that notice was first given to Hartford.

## IV

Plaintiffs' next contention is that they have stated a cause of action for the bad faith refusal to pay benefits.

In support of this contention, plaintiffs cite *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38 [147 Cal.Rptr. 565], for the proposition that "[e]ven if one has lost the principal cause of action, he may still have a claim for the bad faith subsequent conduct of the insurer." Not always. While that principle is true under certain circumstances, it is of no aid to plaintiffs here.

In the cited *Murphy* case, plaintiffs did not seek to hold Allstate on its policy, but for the damages caused by Allstate's conduct after the loss occurred in using contractors who did the repair and restoration of their fire damaged home in an unsatisfactory and unworkmanlike manner. (83 Cal.App.3d 38, at pp. 49-50).

The case at bench is distinguishable as there is no question concerning the date of accrual of the causes of action with which we are here concerned, or that the underlying causes of action were not "on the policy." Moreover, the purported causes of action for bad faith and for negligent infliction of emotional harm fail to state facts sufficient to constitute a cause of action based upon the incorporated facts of certain paragraphs of the respective first causes of action and the incorporated exhibits and the denial of Hartford. These factors, coupled with the failure of plaintiffs to give timely notice, the admitted destruction of the goods before the notice was given, the failure to file suit within the one year time-for-commencement-of-suit provision, and the allegation in the complaint that the damage to the goods was not the result of transit damages but was the result of a manufacturer's defect in the pails in which the beef was packed, adequately formed the basis upon which the trial court properly sustained the general demurrers to the causes of action in question. Since the "goods" consisted of pails of beef, the defective pails constituted an inherent vice of the goods themselves, not damage from an external cause. (See Goodacre, Marine Insurance Claims (1974) pp. 89-90.) Under the "Perils Insured and Special Conditions" clauses of each policy, in capital typed letters, the insured plaintiff warranted that the insurer Hartford would be free of any claims under the policy "arising out of the inherent vice of goods insured. . . ."

Inasmuch as each of the policies specified on its face that it covered "all risks of physical loss or damage from any external cause . . ." there was no coverage for the loss and no bad faith in denying coverage on that ground.

## V

The plaintiffs' next contention is that the complaint affords a basis to award punitive damages. They urge that "[i]f one has pled the covenant

of good faith and fair dealings, punitive damages will lie, since a breach of the covenant is an intentional non-negligent act. Punitive damages can be pled generally when an intentional non-negligent act is alleged. *Unruh* v. *Truck Insurance Exchange* [1972] 7 Cal.3d 616, 632 [102 Cal.Rptr. 815, 498 P.2d 1063] (a general allegation of such intent is sufficient to support a claim for exemplary damages).'' (AOB 15-16)

The right to punitive damages does not rise from the mere pleading of the covenant of good faith or its breach. (See *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 922 [148 Cal.Rptr. 389, 582 P.2d 980]; *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 462-463 [113 Cal.Rptr. 711, 521 P.2d 1103].) While it is true that the requisite malice to establish a right to punitive damages '' '. . . is properly pleaded by alleging the wrongful motive, intent or purpose' '' (*Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d at p. 632, quoting 3 Witkin [Cal. Procedure (2d ed. 1971)] Pleading, § 766, p. 2383) and that ''[a] general allegation of such intent is sufficient to support a claim for exemplary damages'' (*Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d at p. 632), nothing in that statement excuses the requirement that sufficient facts be pleaded to establish the breach of the insurer's duty to its insured. Plaintiffs have failed to sufficiently allege such facts in their complaints.

## VI

As to plaintiffs Frank Cottle and Fred W. Harris, the relevant complaint alleged that each was an individual who owned ''50 percent of the stock in plaintiff corporation and [is] employed by plaintiff corporation, and maintain[s] a close working relationship with plaintiff corporation which relationship is well known to defendants.''

The incorporated policy of insurance shows that neither Cottle nor Harris was a named or additional insured or a beneficiary under the policy. They did not state a cause of action for bad faith or negligent infliction of emotional harm (emotional distress) against Hartford. (See *Austero* v. *National Cas. Co.* (1976) 62 Cal.App.3d 511, 516-517 [133 Cal.Rptr. 107].)

The trial court did not abuse its discretion in dismissing the causes of action in the two complaints as to which the demurrers were sustained without leave to amend.

The order (judgment) of dismissal is affirmed.

Woods, P. J., and Byrne, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 17, 1985.

*Assigned by the Chairperson of the Judicial Council.