[No. B106505. Second Dist., Div. Four. Apr. 28, 1999.]

PHILLIP SERETTI et al., Cross-complainants and Appellants, v. SUPERIOR NATIONAL INSURANCE COMPANY, Cross-defendant and Respondent.

**COUNSEL**

Law Offices of Herbert Dodell, Herbert Dodell; Law Offices of Burton Mark Senkfor and Burton Mark Senkfor for Cross-complainants and Appellants.

Haight, Brown & Bonesteel, Roy G. Weatherup, Robert L. Kaufman, Margaret Johnson Wiley, William G. Baumgaertner and Debra Gemgnani for Cross-defendant and Respondent.

**OPINION**

**CURRY, J.**—Appellants Phillip Seretti and Janja Vujovich contend on appeal that respondent Superior National Insurance Company, the workers' compensation carrier for their wholly owned corporation, was liable to them

individually for failing to defend actions brought as the result of injury to two of the corporation's employees and for entering into a settlement with the employees which was adverse to the interests of the insured. We agree with the trial court that appellants lack standing to assert a claim against respondent for bad faith insurance practices, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Civil Complaints

In June of 1994, Shawn, Debbie, Donna, and Dorian Lobina and Darlene Smith (hereafter the Lobinas) brought suit against appellant Seretti for negligence and wrongful death in connection with a fatal injury to their father, Louis Lobina. Seretti and his wife, appellant Vujovich, owned real property on Floye Street in Hollywood on which the decedent was working at the time of the accident. The complaint alleged that Seretti and the Doe defendants negligently "controlled their premises" and "the construction being performed thereon"; negligently "failed to hire a contractor, failed to properly supervise the construction project, failed to make sure that proper safety precautions and proper construction procedures were being followed"; allowed "dangerous conditions" to exist; and performed work creating "a peculiar risk of harm." Vujovich was added as Doe No. 1 in January 1995, and appellants' wholly owned corporation, Post Sound Corporation, was added as Doe No. 2 in May 1995.[1]

In May of 1995, Omar Garcia, a coworker of Louis Lobina's injured in the same accident, brought an independent action against appellants Seretti and Vujovich, and Post Sound. The two cases were consolidated.

In November of 1995, the Lobinas sought leave to amend their complaint to add a paragraph stating: "Plaintiffs' decedent's death and resulting damages to plaintiffs herein arose out of and occurred in the course of decedent's employment by defendant Post Sound. Defendant Post Sound failed to secure the payment of compensation for the damages arising out of decedent's death, as a result of which plaintiffs bring the within action

---

[1] The Lobinas also ultimately sued the manufacturer of the scaffolding from which the decedent fell.

against defendant Post Sound under the authority of and pursuant to California Labor Code § 3706 et seq."[2]

*Workers' Compensation Compromise and Release*

At the same time the lawsuits were pending, the Lobinas and Garcia pursued workers' compensation claims against Post Sound.[3] In March of 1996, Garcia entered into a compromise and release. Another compromise and release listing Sharon and Dorian Lobina as the applicants, and signed by Sharon only, was also executed in March of 1996.

Both compromise and release documents contained the following language: "Defendant is denying that the applicant was the employee of Post Sound Corporation at the time of his injuries, and defendant is denying that it provided workers' compensation insurance coverage to Post Sound Corporation covering the injuries of [Omar Garcia/Louis Lobina]. [¶] The defendant would produce evidence that the [applicant/decedent] was injured while performing laboring duties on a construction site at a residence owned by Mr. & Mrs. Seretti, principal officers of the Post Sound Corporation. The residence which was being remodeled was neither being used as, nor designated as an insured location and place of business of Post Sound Corporation. No payroll information submitted by Post Sound Corporation listed laborers or carpenters as employees of Post Sound Corporation. [¶] Defendant contends that the work activities engaged in by the [applicant/decedent] herein, were done so at the request of and for the benefit of Mr. & Mrs. Seretti, the owners of the residence. The defendant contends that the fact that [Garcia/Lobina] on occasion performed work activities at Post Sound Corporation, and that Mr. & Mrs. Seretti are the principal stockholders of Post Sound Corporation does not create an employment relationship between the [applicant/decedent], with the duties that he performed on the Seretti residence, nor does it create workers' compensation coverage at a location not listed in the policy declarations." The documents also stated that the applicants reserved the right to proceed against the Serettis individually.

In connection with the settlement of the workers' compensation claims, respondent submitted an affidavit which stated: "A serious dispute exists

---

[2]Labor Code section 3706 provides: "If an employer fails to secure the payment of compensation, any injured employee or his dependents may bring an action at law against such employer for damages, as if this division did not apply."

[3]There was some dispute about whether all the Lobinas or only Sharon Lobina (described as "decedent Louis Lobina's live-in companion") were parties to the workers' compensation action. Sharon was not a party to the civil action.

between the parties as to coverage, employment and injury AOE/COE.[4] As such, defendants contend that payment to lien claimants on a workers' compensation basis is neither appropriate nor reasonable."

*The Cross-complaint*

On March 22, 1996, just before trial was to proceed in the Lobina/Garcia consolidated matter, the trial court heard testimony that "the insurance company"—referring to respondent—"will not be bound by any decision of this court unless they have been included in the action as a party." By minute order of that date, the court granted "[d]efendant's" motion for leave to file a cross-complaint. Post Sound and appellants thereafter filed a cross-complaint against respondent for, among other things, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and declaratory relief. The cross-complaint alleged that appellants were covered under the policy issued by respondent "by virtue of their ownership of Post Sound . . . ." It maintained that Lobina and Garcia were employees of Post Sound and were injured "while acting in the course and scope of their employment . . . ." The claim was based in part on settlement of the Workers' Compensation Appeals Board action on conditions "favorable to [respondent,] but adverse to its insureds."

The insurance policy on which the cross-complaint was based identified the insured as "Post Sound Corporation," operating under the classification of "radio, television or commercial broadcasting stations . . . ." The policy applied to all officers and directors of the corporation as employees, except for those expressly excluded. "Phillip Seretti" and "Janja Vujovich" were expressly excluded from coverage.[5]

Respondent demurred to the cross-complaint contending, among other things, that appellants lacked standing. The Lobinas simultaneously moved to strike the cross-complaint, on the ground that "it exceeds the scope of leave granted by the court's ruling of March 22, 1996." According to those moving parties: "The leave granted by this court strictly limited the scope of the cross complaint which defendants Seretti, Vujovich and Post Sound, etc., would be allowed to bring against Superior National to a declaratory relief type action. The purpose stated by the court for allowing the cross complaint was to determine the limited issue of whether or not defendant Post Sound had viable workers compensation coverage for the subject accident and

---

[4]In workers' compensation parlance, "AOE/COE" means "arising out of and in the course of employment."

[5]Pursuant to Labor Code section 3351, subdivision (c), where the officers and directors of a private corporation are the sole shareholders, the corporation is not required to have workers' compensation coverage for the officers and directors as employees.

resulting death. [¶] The court allowed such a limited declaratory relief type action in an abundance of caution to insure that Superior National would be bound by whatever ruling the court made in a bifurcated trial on the issue of workers compensation insurance coverage pursuant to Labor Code § 3706 and 3708."

The court sustained respondent's demurrer as to appellants on the grounds that (1) "Seretti and Vujovich have no standing in this action" because "[t]hey are not insureds under the subject policy" and (2) "the court did not grant leave to allow Seretti and Vujovich to file a cross-complaint."[6] The court distinguished *Truestone, Inc.* v. *Travelers Ins. Co.* (1976) 55 Cal.App.3d 165 [127 Cal.Rptr. 386] in which shareholders were permitted to maintain a separate claim because "[t]he individual shareholders in Truestone were named insureds in the policy, which is not the case in the present case. Furthermore, in the present case, the policy expressly excludes Seretti and Vujovich from the status of insureds."

The notice of ruling prepared by respondent stated that its "demurrer was sustained as to the entire cross-complaint without leave to amend, as to Phillip Seretti and Janja Vujovich's cross-claims on the basis that they have no standing to sue in this action because they are not insureds under the subject policy of insurance." The judgment, also prepared by respondent, contains similar language: "[T]he court . . . sustained the demurrer of cross-defendant Superior National Insurance Company, without leave to amend, as to the cross-complaint in its entirety regarding the claims of defendants and cross-complainants Phillip Seretti and Janja Vujovich, finding they have no standing to sue in this action as they are not insureds under cross-defendant Superior National Insurance Company's insurance policy at issue in this lawsuit." Appellants noticed a timely appeal from the judgment.[7]

### DISCUSSION

### I

■ Appellants contend that the shareholders of a small, closely held corporation have standing to pursue an insurance bad faith action against the corporation's insurer. In support of their position, appellants rely primarily on *Truestone, Inc.* v. *Travelers Ins. Co., supra,* 55 Cal.App.3d 165. There,

---

[6]The court further stated that it "did not grant Post Sound leave to file a cross-complaint alleging anything other than the 7th C/A for Declaratory Relief re: determination of coverage. The insurance bad faith and fraud theories do not belong in this case and will unnecessarily complicate and delay resolution of this case."

[7]While this appeal was pending, appellants settled with the Lobinas and Garcia.

Travelers Insurance Company and a related insurer issued a policy of liability insurance covering a small corporation, Truestone, Inc., and its sole shareholders. (55 Cal.App.3d at p. 168.) A claim covered by the policy was asserted against the corporation and, according to the insureds, Travelers "unreasonably and in bad faith refused to accept" a settlement within policy limits. (*Ibid.*) The individual shareholders alleged in a separate cause of action against Travelers, that its failure and refusal to settle within policy limits caused them emotional distress. (*Ibid.*) Demurrer was sustained by the trial court to this cause of action. On appeal, the shareholders asserted that "because they, as well as Truestone, are named insureds in the Travelers policy, Travelers was obligated to them as well as to the corporation to act in good faith with respect to claims of third persons against the corporation." (*Id.* at p. 169.)

In considering the issue of whether the shareholders could pursue their own individual breach of covenant claim, the appellate court discussed the rationale behind the formation of the tort: "The covenant of good faith and fair dealing implied in every liability insurance policy obligates the insurer to treat offers to settle claims against its insured within limits of the insurance coverage without regard to its own special interest existing because of policy limits. The covenant thus imposes a duty upon the insurer to accept reasonable settlement offers within the scope of its policy. [Citations.] Breach of the duty creates causes of action in both contract and tort. [Citation.] [¶] While the law recognizes a cause of action in tort, the duty breached by the tortious conduct of an insurer refusing to settle in good faith flows from the contractual relationship. [Citation.] The insured does not, by the contract of insurance, seek 'to obtain a commercial advantage but to protect [himself] against the risks of accidental losses, including the mental distress which might follow from the losses.'" (*Truestone, Inc.* v. *Travelers Ins. Co., supra,* 55 Cal.App.3d at pp. 169-170.)

Because the tort derived from a contractual relationship, the court placed special emphasis on the fact that in the case before it "the [shareholders], equally with their closely held corporation, were parties to the insurance policy with Travelers." (*Truestone, Inc.* v. *Travelers Ins. Co., supra,* 55 Cal.App.3d at p. 170.) As a result, "[t]he duty created by the implied covenant of good faith and fair dealing ran equally to them. . . . The rationale of the tort of refusal of an insurer to settle in good faith . . . dictates that the [shareholders], as named insureds with their corporation, be afforded the protection of the tort cause of action." (*Ibid.*) The court summarized its holding as follows: "[W]here, as here, shareholders of a closely held corporation are joint insureds with it, the insurers' implied covenant of good faith and fair dealing runs to the shareholders as well as to the

corporation and . . . the shareholders may pursue a cause of action for its breach." (*Id.* at p. 171.)

*Truestone* was followed in *Tan Jay Internat., Ltd.* v. *Canadian Indemnity Co.* (1988) 198 Cal.App.3d 695 [243 Cal.Rptr. 907] under similar circumstances. In that case, a liability insurance provider denied coverage and refused to provide a defense to a corporation sued by one of its employees. The employee was injured while transporting a sailboat owned by the corporation's principal shareholder and lent to the corporation for a promotional campaign. The policy included the shareholder as a named insured. (198 Cal.App.3d at p. 707.) The shareholder's separate claim for breach of the covenant of good faith and fair dealing was resolved at the trial level by the trial court's grant of the insurer's motion for judgment notwithstanding the verdict. In overturning that decision, the appellate court quoted a portion of the above language from *Truestone*, emphasizing the insurer's obligation to those named as insureds in the policy: "As was explained in [*Truestone*], " '[t]he covenant of good faith and fair dealing implied in every liability insurance policy obligates the insurer to treat offers to settle claims against its *insured* within limits of the insurance coverage without regard to its own special interest existing because of policy limits. . . . The *insured* does not, by the contract of insurance, seek "to obtain a commercial advantage but to protect [himself] against the risks of accidental losses, including the mental distress which might follow from the losses." ' " (198 Cal.App.3d at p. 707, original italics.) Thus, as in *Truestone*, it was the shareholder's status as an additional insured under the policy which prompted the court in *Tan Jay* to revive his claim.

Appellants rely on language in *Cancino* v. *Farmers Ins. Group* (1978) 80 Cal.App.3d 335 [145 Cal.Rptr. 503] to persuade us that shareholders need not be insureds under the policy to state a breach of covenant claim. That case involved an insurance company's alleged failure to deal "fairly and in good faith" with a party purporting to be both an insured and a claimant under an uninsured motorist provision of a liability policy issued to another party. (80 Cal.App.3d at p. 337.) The complaint had alleged that the claimant/plaintiff " 'was an express "insured" under the terms and conditions of said insurance policy,' by virtue of the fact that he 'was loading' the 'insured' 'motor vehicle' at the time he was struck by an automobile driven by an uninsured motorist." (*Ibid.*) The main issue in *Cancino* was whether the insurer's duty of good faith and fair dealing applied equally to the insurer's handling of a claim for compensation directly from the insurer as it did to the insurer's handling of a liability claim. The court concluded: "There is no difference between the duty of an insurer to settle an insured's liability claim and thus protect him from liability in excess of policy limits

and its duty to settle the insured's claims to compensation directly from the insurer. These are both simply aspects of the same duty which is said to be based upon the implied covenant of good faith and fair dealing." (*Id.* at p. 340.)

In reaching this conclusion, the court discussed a number of cases which seemed to suggest that the insurer's duty ran to the insured and not the claimant. Discussing *Truestone,* the court stated: "The holding in *Truestone* was that two individuals who were sole shareholders of a corporation could sue the insurer. The corporation and both shareholders were named insureds in the policy. Suit was brought against the corporation on a claim within the coverage of the policy. The claimant offered to settle within policy limits and the insurer refused. When the claim went to trial, the resulting judgment exceeded the policy limits by $35,000. The shareholders were held entitled to seek both compensatory and punitive damages. In so holding, the court noted (55 Cal.App.3d at p. 170): 'Here the [shareholders], equally with their closely held corporation, were parties to the insurance policy with Travelers. The duty created by the implied covenant of good faith and fair dealing ran equally to them.' *Nothing said by the court, however, suggests that insureds who are not parties to the insurance contract are not owed the same duty.*" (*Cancino* v. *Farmers Ins. Group, supra,* 80 Cal.App.3d at p. 341, italics added.)

The court went on to explain why the plaintiff was, in fact, an insured under the policy: " '[T]he term "insured" means the named insured and the spouse of the named insured and relatives of either while residents of the same household while occupants of a motor vehicle or otherwise, heirs and any other person while in or upon or entering into or alighting from an insured motor vehicle . . . .' [Citation.] Persons such as plaintiff are required to be covered by virtue of the same provision which benefits the named insured. The intent to benefit all insureds has the same sources: (1) the general policy of the Insurance Code 'to . . . provide compensation for those injured through no fault of their own. . . .' [Citation.]; and (2) the specific policy expressed in Insurance Code section 790.03, subdivision (h)(5) which prohibits as unfair practice in the business of insurance '[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.' " (*Cancino* v. *Farmers Ins. Group, supra,* 80 Cal.App.3d at p. 345.)

Appellants are correct that the court in *Cancino* recognized a distinction between the "parties" to the insurance contract—who will generally also be named insureds—and "insureds" who are neither parties to the insurance contract nor specifically named therein. A person can be deemed an "insured" by virtue of fitting into an expressly defined category of those for

whose benefit the policy was created. This distinction does not assist appellants here. They were not parties to the insurance contract; they were not specifically named insured; and to the extent they fit into the general category of those for whom the policy was created to benefit—employees, officers, and directors of Post Sound—they were specifically excluded.

In short, none of the cases relied upon by appellants support their position. In each, the plaintiff was deemed to be an insured under the relevant policy, either by virtue of being a party to the insurance contract or named in the policy or by virtue of the policy definition of "insured" to include a class of which the plaintiff was a member.[8] These cases evince the fundamental rule that "[p]rivity of contract with the insurer is essential to an implied covenant action against the insurer." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 1998) ¶ 12:55, p. 12A-14.) "Whether for better or worse . . . liability for 'bad faith' has been strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of an underlying contractual relationship. Where no such relationship exists, no recovery for 'bad faith' may be had. [Citation.] [¶] . . . [¶] [Thus], an insurer's duty of good faith and fair dealing is owed solely to its insured and, perhaps, any express beneficiary of the insurance policy." (*Austero* v. *National Cas. Co.* (1976) 62 Cal.App.3d 511, 516-517 [133 Cal.Rptr. 107].)

*Austero* is one of several cases in which a party closely connected or related to the insured was precluded from recovering for its own damages arising from the insurer's breach of covenant of good faith and fair dealing owed to the insured. In *Austero*, the insurer denied Mr. Austero's claim for disability benefits, causing emotional distress to his wife. Mrs. Austero contended that her emotional distress was reasonably foreseeable, and pointed out that the disability policy premiums were paid with community funds and that their proceeds constituted community property. Concerning the foreseeability of harm to the wife of the policyholder, the court noted that it "is an important factor in fixing liability for negligently caused injury and may be an important factor in establishing tort liability generally, but it is only one of a number of policy factors to be considered. [Citations.]" (62 Cal.App.3d at p. 516.) Concerning her interest in the policies and their proceeds, the court said: "[T]he fact remains that she is not a party to the contracts. As to disability benefits, plaintiff is at most an incidental or remote beneficiary, and, as such, can state no cause of action against [the

---

[8]We note that the *Cancino* court also relied on Insurance Code section 790.03, subdivision (h), and the plaintiff's status as a claimant under the policy. This reasoning is no longer appropriate in view of the Supreme Court's holding in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 313 [250 Cal.Rptr. 116, 758 P.2d 58], that no private right of action under section 790.03, subdivision (h) exists.

disability insurer] for breach of a duty, express or implied, arising from the contractual relationship. [Citations.]" (*Id.* at p. 517.)

A wife's claim for bad faith was rejected under similar circumstances in *Hatchwell* v. *Blue Shield of California* (1988) 198 Cal.App.3d 1027 [244 Cal.Rptr. 249]. There, the husband was insured by a medical policy obtained through his employment. He had enrolled his wife as a "Dependent Subscriber," but the bad faith claim was based on failure to pay benefits arising from his hospitalization and medical care. The court pointed out that the wife "was not a contracting party," and that "[s]omeone who is not a party to the contract has no standing to enforce the contract or to recover extra-contract damages for wrongful withholding of benefits to the contracting party." (198 Cal.App.3d at p. 1034.) Moreover, "[a]lthough she was eligible for health care benefits as a Dependent Subscriber, and as such may be termed a 'co-insured' or 'dependent beneficiary,' . . . this is not sufficient to establish standing to sue for breach of contract and bad faith based upon the denial of benefits to [the husband]. A nonparty who is nevertheless entitled to policy benefits, such as an 'insured' person under the terms of the policy or an express beneficiary, has standing only if she is the *claimant* whose benefits are wrongfully withheld. [Citations.]" (*Ibid.*, citing *Cancino* v. *Farmers Ins. Group, supra,* 80 Cal.App.3d at pp. 344-345, original italics.) "[The wife's] argument ignores the fact that the basis of her action is the denial of benefits for [the husband]. Her coverage as a dependent . . . does not give her standing to enforce [the husband's] contract rights. Although [the wife] is an insured person and an express beneficiary in regard to her own health care benefits, she is merely an incidental beneficiary in regard to [the husband's] benefits." (*Hatchwell* v. *Blue Shield of California, supra,* 198 Cal.App.3d at p. 1035, fn. omitted.)

*Hatchwell* was followed in *Gantman* v. *United Pacific Ins. Co.* (1991) 232 Cal.App.3d 1560 [284 Cal.Rptr. 188], where the court held that the individual members of a homeowners association did not have standing to prosecute a bad faith action against the association's insurer. The court explained: "Here, although plaintiffs stand to gain when Association gains, the benefits plaintiffs seek belong to Association by the insurance contracts sued upon. . . . Plaintiffs are simply not claimants whose benefits were wrongfully withheld." (*Id.* at p. 1568.)

Finally, although not discussed in any of the briefs, the issue of whether shareholders to a closely held corporation can maintain their own bad faith action against the corporation's insurer was considered by this court in *C & H Foods Co.* v. *Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055 [211 Cal.Rptr. 765]. The corporation, C & H, had purchased marine insurance policies

covering the shipment of 6,437 pails of cured beef. Over 4,000 pails were delivered spoiled and in an unusable condition. Two shareholders brought a claim against the insurer based on the allegations that they were each 50 percent owners of C & H, and that the insurance policies were bought at their behest to guarantee the continued operation of C & H, and that they suffered emotional distress as a result of the failure to pay the corporation's claim. (163 Cal.App.3d at p. 1061.) This court concluded that because the shareholders were neither the named nor additional insureds nor beneficiaries under the policy, "[t]hey did not state a cause of action for bad faith or negligent infliction of emotional harm (emotional distress) against [the insurer]. [Citation.]" (*Id.* at p. 1068.)

In accordance with the overwhelming weight of authority, we affirm the trial court's ruling on appellants' lack of standing as shareholders to assert a claim against the corporation's insurer.

## II

Appellants suggest that privity could be achieved by allowing them to pierce the veil of their own corporation and substitute themselves in the place of Post Sound as the named insured under the policy. Ignoring a corporation's separate existence is a rare occurrence, particularly where it is the shareholders who seek to pierce its veil, and the courts will do so only "to prevent a grave injustice. [Citations.]" (*Cooperman* v. *Unemployment Ins. Appeals Bd.* (1975) 49 Cal.App.3d 1, 7 [122 Cal.Rptr. 127].) The possibility that a contractor will not get paid for any of his work because he entered a contract in his own name but held his license under a corporate name, represents a grave injustice. (See *Citizens State Bank* v. *Gentry* (1937) 20 Cal.App.2d 415, 420 [67 P.2d 364].) Appellants' inability to maintain individual actions against their corporation's workers' compensation carrier does not. That individual shareholders will not be able to pursue bad faith insurance claims against the corporation's insurer does not allow the insurer to escape liability for improper conduct. The corporation itself, as named insured, can pursue its own rights, and the shareholders will profit indirectly.

Individuals are free to operate their business in their own names and accept all its debts and liabilities as their own. Having elected to avail themselves of the benefits of the corporate structure, as appellants did here, they cannot be heard to complain of their inability to take personal advantage of a right belonging to the corporation alone.

## III

Appellants state that there is an ambiguity in the policy and therefore a potential for coverage. This argument, as we understand it, goes like this: (1)

the policy states that "We [respondent] have the right and duty to defend, at our expense, any claim, proceeding or suit against you [Post Sound] for damages payable by this insurance"; (2) the Lobina and Garcia actions were suits against Post Sound for damages; (3) "damages" under the policy are defined to include damages " 'for which [Post Sound is] liable to a third party . . . by reason of a claim or suit against [Post Sound] by that third party to recover the damages claimed against such third party as a result of injury to [Post Sound's] employees [e.g., Lobina and Garcia]' "; (4) if appellants were held individually liable for injury to Lobina and Garcia, they would sue Post Sound for indemnity under the Labor Code[9] or some other theory; therefore, (5) respondent is obligated to defend the Lobina and Garcia lawsuits entirely, including claims which are not asserted against Post Sound; and (6) appellants and anyone else who might possibly sue Post Sound for indemnity for injury to one of Post Sound's employees are potential "insureds" under the policy.

We see numerous flaws in appellants' analysis. First, assuming that a duty to defend the entire Lobina and Garcia actions could be derived from the policy language, such duty would run to the insured. As we have explained at length, appellants are not insureds under the policy and have no standing to assert a claim for a failure to perform a duty owed under it. It would be up to Post Sound to bring a claim for failure to defend, if one exists.

Second, the duty to defend and damage provisions quoted by appellants come into play only when a "claim, proceeding, or suit" is actually brought against Post Sound "for damages payable by this insurance" or "a claim or suit" is brought by a third party "to recover the damages claimed against such third party as a result of injury to [Post Sound's] employees . . . ." Nothing in the record presented here or to the trial court suggests that appellants asserted a claim against Post Sound for indemnity or that Post Sound tendered any such claim to respondent. (See Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 7:604, p. 7B-25 ["The duty to defend arises when the insured tenders defense of the third party lawsuit to the insurer."].)

Finally, this issue of whether a third party's potential claim for indemnity from the insured means that a duty of good faith is owed to the third party was resolved in *Republic Indemnity Co.* v. *Schofield* (1996) 47 Cal.App.4th 220, 226-227 [54 Cal.Rptr.2d 637] and *Alex Robertson Co.* v. *Imperial*

---

[9]Labor Code section 2802 provides: "An employer shall indemnify his employee for all that the employee necessarily expends or loses in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying such directions, believed them to be unlawful."

*Casualty & Indemnity Co.* (1992) 8 Cal.App.4th 338 [10 Cal.Rptr.2d 165]. In *Republic Indemnity*, the cross-complainants, as employees, officers and directors of a professional corporation, brought a claim for breach of contract and breach of the covenant of good faith and fair dealing against the corporation's workers' compensation and employer's liability insurer.[10] The insurer moved for, and obtained, summary judgment on the ground that none of the claimants was an insured under the policy. On appeal, the cross-complainants argued that the indemnification provision contained in section 2802 of the Labor Code created an implication that all employees of a corporation were insureds under the policy. The court disagreed: "It is true the insurer may have to indemnify the corporation to the extent it is legally liable for losses its employees suffer. However, this does not mean the employees are 'insureds' under the policy for the purpose of maintaining a breach of contract or bad faith action against the insurer. [¶] . . . [¶] . . . 'It is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer.' [Citation.]" (47 Cal.App.4th at p. 227, quoting *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [44 Cal.Rptr.2d 370, 900 P.2d 619], original italics)

Similarly, in *Alex Robertson Co.* v. *Imperial Casualty & Indemnity Co.*, *supra*, 8 Cal.App.4th 338, a contractor entered into a contract with an architectural firm to provide architectural plans and specifications. The contract required the architectural firm to indemnify the contractor for its negligent acts, errors, and omissions. The architectural firm did not carry professional liability insurance. The contractor demanded that it obtain such insurance, and agreed to pay the premiums. The policy obtained specifically referenced the contract between the contractor and the architectural firm and made clear that it covered the architectural firm's liability under the contract. Subsequently, the contractor was sued for breach of contract and negligence in connection with the construction project. He tendered the defense to the architectural firm's insurer, and pursued an action against it after it refused to step in.

On appeal from the insurer's motion for summary judgment, the contractor contended that "it [was] an insured under the policy, or at least a triable question of fact exists as to that issue, by reason of the contractual liability coverage endorsement, the intent of [the parties and the insurance agent] that [the contractor] be covered, and evidence [the contractor] was billed for and

---

[10]Contrary to what is stated in respondent's brief, the claimants did not base their claims against the insurer on their status as shareholders.

paid the premiums on the policy." (*Alex Robertson Co.* v. *Imperial Casualty & Indemnity Co., supra,* 8 Cal.App.4th at p. 343.) The appellate court rejected that contention. As the court explained: "In essence, [the contractor] has sued the wrong party. Its indemnity agreement is with [the architectural firm], not with [the insurer]. [The contractor] may be able to proceed against [the architectural firm] under contractual or equitable indemnity theories. [Citations.] In either case, however, it must establish liability on the part of [the architectural firm]. . . . [¶] . . . [¶] Under the policy, [the insurer] agreed to pay 'on behalf of [the architectural firm] all sums which [the architectural firm] shall become legally obligated to pay . . . by reason of liability arising out of any negligent act . . . in rendering or failing to render professional services . . . .' [The architectural firm] has not yet become legally obligated to pay anything. Until such event, any claim by [the contractor] against [the insurer] under the policy is premature." (8 Cal.App.4th at p. 347, fn. omitted.)

The same is true here. If appellants assert an indemnification claim against the insured, Post Sound, then that claim could be tendered to respondent. Until such time as a claim against its insured had been presented, respondent has no duty to defend and cannot be charged with bad faith.

## DISPOSITION

The judgment is affirmed.

Epstein, Acting P. J., and Hastings, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 21, 1999.