[No. H007390. Sixth Dist. Aug. 6, 1991.]

MELVYN JOSEPH GANTMAN et al., Plaintiffs and Appellants, v. UNITED PACIFIC INSURANCE COMPANY et al., Defendants and Respondents.

COUNSEL

Robert L. Mezzetti II for Plaintiffs and Appellants.

Williams, Kelly, Romanski, Polverari & Skelton, Karen E. Halbo, Nelson, Perlov & Lee, Thomas F. Nelson, Haims, Johnson, MacGowan & McInerney and Randy M. Marmor for Defendants and Respondents.

OPINION

AGLIANO, P. J.—In this case we hold that individual members of a homeowners association in a planned residential development have no standing to maintain an action against insurance companies on policies purchased by and issued to the homeowners association managing the development and under which plaintiffs are not insureds. We therefore affirm summary judgment in favor of defendants United Pacific Insurance Company (United) and St. Paul Fire and Marine Insurance Company (St. Paul) and against plaintiffs Melvyn and Sharon Gantman.

We also affirm the judgment in favor of defendant United on plaintiffs' separate cause of action to recover on a policy issued to plaintiffs personally. ■ The judgment here is on alternate grounds that (1) the loss occurred outside the period of coverage, or (2) the standard one-year limitation clause in the policy (requiring commencement of suit on the policy within twelve months after inception of loss) barred the action.

BACKGROUND

The material facts are undisputed.

Plaintiffs own a residence in Vista de Saratoga, a planned development located in San Jose.[1] The development includes 40 residential units and a

---

[1] A planned development is "a development (other than a community apartment project, a condominium project, or a stock cooperative) having either or both of the following features: [¶] (1) The common area is owned either by an association or in common by the owners of the separate interests who possess appurtenant rights to the beneficial use and enjoyment of the

common area parcel. It is subject to a declaration of covenants, conditions, and restrictions recorded on August 8, 1978. The declaration provides that the business affairs of the development are in the charge of Vista de Saratoga Homeowners Association, a nonprofit corporation (Association). The declaration causes each residential lot owner to be a member of Association. Association owns the common area parcel.

The declaration empowers Association to assess and collect funds from its members for Association's enumerated obligations.

Among other duties, the declaration charges Association with (1) maintenance of the exterior surfaces of the residences, including roofs, and (2) purchase and maintenance of "[a] policy of insurance covering residence buildings . . . ." With certain exceptions, it prohibits any member from separately insuring his/her residence and specifically provides as follows: "Each Owner shall be deemed to appoint the Association as his true and lawful attorney-in-fact to act in connection with all matters concerning the maintenance of the Master Policy. Without limitation on the generality of the foregoing, the Association as said attorney shall have full power and authority to purchase and maintain such insurance, to collect and remit the premiums therefor, to collect proceeds and to distribute the same to the Association, the Owners and their respective mortgagees (subject to the provisions of these Restrictions) as their interests may appear, to execute releases of liability and to execute documents and to do all things on behalf of the Owners as shall be necessary or convenient to the accomplishment of the foregoing; and any insurer may deal exclusively with the Association in regard to such matters."

The declaration further states: "The Board shall have the exclusive right to contract for all goods, services and insurance, payment for which is to be made from the maintenance fund, and the exclusive right and obligation to do so, except as otherwise provided herein."

Plaintiff Melvyn Gantman (Gantman) is the treasurer of Association. He has been a member of Association's board of directors since 1979 and treasurer for most of his tenure.

During the first year that plaintiffs resided in the development, water leaked through the roof into plaintiffs' home following rainstorms. In

---

common area. [¶] (2) A power exists in the association to enforce an obligation of an owner of a separate interest with respect to the beneficial use and enjoyment of the common area by means of an assessment which may become a lien upon the separately owned lot, parcel, or area in accordance with [Civil Code] [s]ection 1367." (Civ. Code, § 1351, subd. (k).)

subsequent years water similarly leaked through roofs of other units through-out the development. Association presented one or two homeowners insur-ance claims to St. Paul for damages caused by the porous roofs. On July 12, 1984, an engineer reported to Association that construction of the roofs of the development had been defective, particularly the flat portions and tile portions. In September 1984, Association notified all of its past and present insurance companies of the defects.

United's policy was in effect from February 11, 1980, to February 11, 1982. The named insured is Association. The policy also defines as insured "any executive officer, member of the board of trustees, directors or gove-nors [sic] or stockholder thereof while acting within the scope of his duties as such," "any employee of the named insured while acting within the scope of his duties as such," and "any person or organization while acting as real estate manager for the named insured."

St. Paul's policy was in effect from February 11, 1982, to April 11, 1984. Although St. Paul did not place the policy in evidence to support its motion, it submitted Gantman's deposition testimony which established the follow-ing: as treasurer for Association, Gantman was Association's liaison with the insurance broker who procured the policy; the policy was issued to Associ-ation; Gantman was not an additional insured under the policy in his capacity as an individual homeowner.

Concerning the flat portions of the roofs, Association made a claim of $110,609.71, and the claim was paid to Association by St. Paul ($95,195) and Standard Fire Insurance Company ($15,414.71). None of the insurance companies paid any claim for the tile portions of the roofs, and Association declined to pursue the matter.

Plaintiffs filed this action against the insurance companies and others on July 12, 1985,[2] primarily seeking recovery for defects in the tile portions of

[2]This fact justifies the trial court's ruling in favor of United aside from plaintiffs' lack of standing because the standard one-year limitation clause in United's policy bars this action. This follows because an "insured's suit on the policy will be deemed timely if it is filed within one year after 'inception of the loss,' defined as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." (*Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674, 686-687 [274 Cal.Rptr. 387, 798 P.2d 1230].)

If the manifestation of plaintiffs' loss occurred during United's policy period, the last conceivable date that an action could have been filed was February 10, 1983, one year from expiration of the policy. The filing in July 1985 is unquestionably late even considering that the period from a claim, in this case September 1984, until denial of such is tolled. (*Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at p. 693.) On the other

the roofs. As to United and St. Paul, the fourth amended complaint asserts various theories of recovery predicated upon a contractual relationship emanating from the homeowners insurance policies issued by United and St. Paul to Association. Plaintiffs admit bringing the action in their individual capacities and allege that they entered into the relevant insurance policies.[3] Association is not a plaintiff or defendant and there is no allegation that the action is maintained on behalf of Association. Gantman admitted in his deposition testimony that he had no ownership interest in the roof over his home, but claimed he held a "percentage" interest in each and every one of the roofs.

## STANDING

"Every action must be prosecuted in the name of the real party in interest . . . ." (Code Civ. Proc., § 367.) "Generally, 'the person possessing the right sued upon by reason of the substantive law is the real party in interest.' [Citations.]" (*Del Mar Beach Club Owners Assn.* v. *Imperial Contracting Co.* (1981) 123 Cal.App.3d 898, 906 [176 Cal.Rptr. 886, 25 A.L.R.4th 336].) It follows that "[s]omeone who is not a party to [a] contract has no standing to enforce the contract or to recover extra-contract damages for wrongful withholding of benefits to the contracting party." (*Hatchwell* v. *Blue Shield of California* (1988) 198 Cal.App.3d 1027, 1034 [244 Cal.Rptr. 249].) In the insurance context, "[a] nonparty who is nevertheless entitled to policy benefits, such as an 'insured' person under the terms of the policy or an express beneficiary, has standing only if [he or] she is the *claimant* whose benefits are wrongfully withheld." (*Ibid.*)

Here, Association is a nonprofit corporation[4] and the named insured under the relevant policies. Plaintiffs are suing in their capacity as members[5] of Association and are not additional insureds or express beneficiaries under

hand, if manifestation of plaintiffs' loss occurred before or after United's policy period, United's duty to indemnify never arose. (*Id.* at p. 699.) Under either scenario, United was entitled to have its motion granted.

[3]Plaintiffs also claim that they are acting as representatives of the owners of the development. This claim, however, is immaterial to our analysis of plaintiffs' standing to sue since the standing of the owners of the development via plaintiffs is coextensive with plaintiffs' standing.

[4]Under the Nonprofit Corporation Law (Corp. Code, § 5000 et seq.) there are three principal types of nonprofit corporations: a public benefit corporation (Corp. Code, §§ 5110-6910), a mutual benefit corporation (Corp. Code, §§ 7110-8910), and a religious corporation (Corp. Code, §§ 9110-9690). By elimination, homeowners associations fall into the mutual benefit category which encompasses corporations formed "for any lawful purpose . . . ." (Corp. Code, § 7111.) In addition, homeowners associations, whether incorporated or unincorporated, have independent statutory authority to exercise the powers granted to nonprofit mutual benefit corporations. (Civ. Code, § 1363.) We, therefore, cite the Nonprofit Mutual Benefit Corporation Law where applicable.

[5]A nonprofit mutual benefit corporation admits persons to membership rather than as stockholders. (Corp. Code, § 7310.)

the policies. There is established law regarding the rights, powers, and duties of nonprofit corporations and their members. We cite principles pertinent to our analysis.

A nonprofit corporation, like a business corporation, has all the powers of a natural person in carrying out its activities. (Corp. Code, § 7140.) These powers specifically include the power to enter into contracts. (Corp. Code, § 7140, subd. (i).) A contract in the corporate name "binds the corporation, and the corporation acquires rights thereunder whether the contract is executed or wholly or in part executory." (Corp. Code, § 7141, subd. (b).) Correspondingly, a member of a nonprofit corporation "is not, as such, personally liable for the debts, liabilities, or obligations of the corporation." (Corp. Code, § 7350, subd. (a).) ▮▮▮ A member of a nonprofit corporation is prohibited from instituting or maintaining an action in the right of the corporation unless the action is a derivative suit. (Corp. Code, § 7710.)[6]

▮ These elementary rules have been specifically applied in cases involving shareholder actions against insurance companies.

In *Truestone, Inc.* v. *Travelers Ins. Co.* (1976) 55 Cal.App.3d 165 [127 Cal.Rptr. 386], the court reversed a judgment of dismissal rendered against individual shareholders in an action arising from the defendant's failure to settle a claim against the corporation. The court observed that the plaintiffs were parties to the insurance contract and concluded "that where, as here, shareholders of a closely held corporation are joint insureds with it, the insurers' implied covenant of good faith and fair dealing runs to the shareholders as well as to the corporation and that the shareholders may pursue a cause of action for its breach." (*Id.* at p. 171.)

In *C & H Foods Co.* v. *Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055 [211 Cal.Rptr. 765], the court affirmed a judgment of dismissal rendered against individual shareholders in an action arising from the defendant's failure to pay a claim made by the corporation. It observed and concluded: "The

---

[6]"A shareholder's derivative suit seeks to recover for the benefit of the corporation and its whole body of shareholders when injury is caused to the corporation that may not otherwise be redressed because of failure of the corporation to act." (*Jones* v. *H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106 [81 Cal.Rptr. 592, 460 P.2d 464].) A derivative suit must allege "with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file." (Corp. Code, § 7710, subd. (b)(2).) The requirements for a derivative action also make provisions that a plaintiff post a bond and for a motion procedure whereby the corporation may move to impose the bond. (Corp. Code, § 7710, subds. (c)-(f).)

incorporated policy of insurance shows that neither [shareholder] was a named or additional insured or a beneficiary under the policy. They did not state a cause of action for bad faith or negligent infliction of emotional harm (emotional distress) against [the defendant]." (*Id.* at p. 1068.)

Plaintiffs offer no cogent reason why we should disregard the separate identity of Association.

They claim that the declaration of covenants, conditions and restrictions makes Association their agent and conclude they have standing to sue under general agency principles. The declaration, however, unambiguously states that the right to contract concerning a master policy of insurance is exclusive to Association.

Plaintiffs also assert they are entitled to sue as third party beneficiaries of the insurance policies. They acknowledge, however, that they have standing "only if [they are claimants] whose benefits are wrongfully withheld." (*Hatchwell* v. *Blue Shield of California, supra,* 198 Cal.App.3d at p. 1034.) Here, although plaintiffs stand to gain when Association gains, the benefits plaintiffs seek belong to Association by the insurance contracts sued upon. The benefits also belong to Association in the first instance according to the declaration which imposes on Association the duty to repair and maintain the roof. Plaintiffs are simply not claimants whose benefits were wrongfully withheld.

Plaintiffs finally argue that Gantman is entitled to sue because he is an additional insured under the policies by virtue of his status as a board member of Association. There is no merit to this contention since Gantman is maintaining this action in his individual capacity. (*Daon Corp.* v. *Place Homeowners Assn.* (1989) 207 Cal.App.3d 1449, 1454 [255 Cal.Rptr. 448] ["What capacity or capacities the Association acts in as plaintiff is critical."].)

██ It seems clear in this case that plaintiffs disagree with Association's decision regarding these insurance claims and the pursuit of litigation. There are remedies for this predicament, such as institution of a derivative suit or an action against the Association. Otherwise, "neither a court nor minority shareholders can substitute their business judgment for that of a corporation where its board of directors has acted in good faith and with a view to the best interests of the corporation and all its shareholders. [Citations.] 'The power to manage the affairs of a corporation is vested in the board of directors. . . . Where a board of directors, in refusing to commence an action to redress an alleged wrong against a corporation, acts in good faith within the scope of its discretionary power and reasonably believes its

refusal to commence the action is good business judgment in the best interest of the corporation, a stockholder is not authorized to interfere with such discretion by commencing the action. . . .' [Citations.]" (*Beehan* v. *Lido Isle Community Assn.* (1977) 70 Cal.App.3d 858, 865-866 [137 Cal.Rptr. 528].)

### PLAINTIFFS' INDIVIDUAL POLICY

Plaintiffs contend they raised a triable issue of fact as to when damage to the interior of their home became appreciable such that they knew or should have known of their duty to notify United of their claim. Their pleadings, however, establish the contrary.

A motion for summary judgment addresses the question whether there are dispositive material facts which are not in dispute. (Code Civ. Proc., § 437c.) "[M]ateriality depends on the *issues in the case*; evidence which does not relate to a matter in issue is *immaterial*. [Citations.] [¶] What matters are in issue (and consequently material) is determined mainly by the pleadings, the rules in pleading and the substantive law relating to the particular kind of case." (1 Witkin, Cal. Evidence (3d ed. 1986) Circumstantial Evidence, § 286, pp. 255-256.) A party moving for summary judgment can rely upon admissions in an adversary's pleadings to establish facts in support of the motion. (*Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 148 [60 Cal.Rptr. 377, 429 P.2d 889].)

The fourth amended complaint alleges the following facts relevant to the policy at issue:

"41. A fifth policy was entered into with UNITED PACIFIC RELIANCE. The coverage of the fifth policy extends from June 24, 1982[,] through June 24, 1988. In pertinent part the fifth policy provides that defendant UNITED PACIFIC RELIANCE will indemnify plaintiffs from damages to the interior of plaintiffs['] individual unit within the structure known as Vista De Saratoga up to the monetary limits as stated therein. Specifically, said defendant agreed in the fifth policy to indemnify plaintiffs for damage to the interior of plaintiffs['] individual unit including additions and alterations thereto within the structure known as Vista De Saratoga in the event that the primary policy on the structure failed to provide coverage for such damage.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"43. In or about June, 1979, plaintiffs' structure sustained direct physical loss. Plaintiffs gave timely notice of the loss covered in Policies[.] By reason thereof, under the terms of said Policies, and the laws of the State of

California, defendants and each of them became obligated to pay and plaintiffs became entitled to, indemnification of the loss."

It is axiomatic that one cannot sue upon an insurance policy which became effective in 1982 to recover for a loss that occurred in 1979. Since the pleadings in this case seek indemnity for a loss which occurred and was manifest before the policy sued upon became effective, United cannot be liable under ordinary principles of contract law. Accordingly, the trial court properly granted United's motion as to plaintiffs' individual cause of action.

The judgment is affirmed.

Cottle, J., and Elia, J., concurred.

A petition for a rehearing was denied September 4, 1991, and appellants' petition for review by the Supreme Court was denied November 13, 1991.