Opinion
CROSKEY, J.
In this appeal, plaintiffs[1] seek reversal of an order dismissing their complaint which had sought damages for the alleged negligent acts and omissions of the defendant Associated International Insurance Company (hereafter AIIC). Plaintiffs alleged that AIIC negligently failed to timely perform its indemnity obligations under a policy of property insurance issued to a third party. Concluding that plaintiffs, who were not insured parties under the policy, had no standing to complain about AIIC’s *356 performance, the trial court sustained AIIC’s demurrer without leave to amend.
We have concluded that the trial court reached the correct result. Plaintiffs claimed that AIIC had a “special” relationship with them and thus owed them a duty of care. This claim rested upon the principles articulated by the Supreme Court in Biakanja v. Irving (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358], and its progeny. To recognize such a duty under the facts presented here, however, would ignore the later limitations imposed upon the Biakanja duty analysis by the court’s decision in Bily v. Arthur Young & Co. (1992) 3 Cal.4th 370, 396-399 [11 Cal.Rptr.2d 51, 834 P.2d 745, 48 A.L.R.5th 835]. In addition, to recognize that a noninsured party could have standing to prosecute a tort claim against an insurer for its negligent investigation and adjustment of a claim filed by an insured party would give to the former greater rights than those to which the latter is entitled. An insured can recover in tort against an insurer for the improper handling of a claim only upon a showing that the insurer acted in bad faith; as we explain, such a showing requires something more than simple negligence. We cannot endorse such an anomalous result.
We therefore will affirm the order of dismissal.
Factual and Procedural Background[2]
Plaintiffs are the individual owners of condominium units within the Chateau Chamberay Condominium project (project) which is located on Roscomare Road in Los Angeles. The project is a multistory common interest development within the meaning of the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.). It is managed by the Chateau Chamberay Homeowners Association (hereafter HO A).
Prior to January 17, 1994, AIIC had issued to the HOA a homeowners policy of property insurance which provided coverage for losses from various perils, including earthquake damage. Such policy covered the common areas of the project but did not extend coverage to the individual units owned by the plaintiffs. The policy was in effect on January 17, 1994, when *357 the Northridge earthquake occurred. The project suffered substantial damage, including damage to the structure.[3] Such damage as occurred to the project, including its common areas,[4] was covered under AIIC’s policy. The nature and extent of such damage was at all times known to AIIC, whose agents and adjusters visited and inspected the project on multiple occasions after January 17, 1994.
The HOA timely made a proper and documented claim under the policy seeking the repair of the damage caused to the common areas of the project. AIIC failed to make such repairs or provide the funds required under the policy which were necessary to complete the repairs. As a result of AIIC’s failure to perform under the policy, the necessary repairs to the structure of the project were not made. Such structural repair had to be made before plaintiffs could commence or complete the repairs to their individual units. Indeed, the repair of the damage to the common areas was so necessarily intertwined with the repair of the individual units that the latter could not be accomplished without completion of the former.
As a result, plaintiffs were forced to incur the expense of finding other living quarters, or to live amidst disrepair, and suffered significant diminution in the value of their units. Such additional expenses would not have been incurred had AIIC timely and fully performed its obligations under the policy.
The HOA filed an action against AIIC seeking damages for both breach of contract and breach of the implied covenant of good faith and fair dealing. The latter claim for bad faith was disposed of by the trial court when it granted AIIC’s motion for summary adjudication of that claim.[5] After certain technical coverage issues were resolved by the trial court, the HOA’s breach of contract claim was submitted to binding arbitration and resulted in *358 a judgment in favor of the HOA, which awarded it the sum of $707,387.[6] That judgment is now final.[7]
In view of these circumstances, plaintiffs claim to have a personal economic interest in the prompt performance by AIIC of its obligations under the policy.[8] They allege that such interest, and their risk of injury and harm if AIIC did not make a timely and proper performance of its indemnity obligations, were reasonably foreseeable at the time AIIC issued its policy to the HOA. Indeed, they argue, the entire aim and purpose of that policy, although describing only the HOA as the “named insured,” was the protection of the interests of the plaintiffs who were not only the owners of the insured premises and the persons who would directly benefit from AIIC’s performance, they were the parties who would be directly and immediately harmed by the failure of AIIC to render a timely and proper performance.
Plaintiffs allege that as a direct and proximate result of AIIC’s negligent failure to discharge its indemnity obligations under the policy, and the resulting delay in the repair of the common areas, they have suffered damages consisting of (1) a delay and inability to make repairs to their individual units, (2) relocation costs, (3) rental and storage expenses, and (4) the diminution of the value of their units, all of which was reasonably foreseeable to AIIC at the time it issued its policy to the HOA.
AIIC responded to the plaintiffs’ complaint by filing a demurrer.[9] AIIC argued that plaintiffs were effectively attempting to recover under the policy *359 and they had no standing (as noninsureds) to seek such a recovery. As individual unit owners they had no standing to prosecute a claim which belonged solely to the HOA. Moreover, the damage to the plaintiffs’ individual interests in their units was not covered under the policy and AIIC had no liability therefor as it had not agreed to assume such a burden under the policy. The trial court agreed and, on January 7, 1999, sustained AJIC’s demurrer without leave to amend. An order of dismissal was entered on January 25, 1999. Plaintiffs have prosecuted this timely appeal.
Issue Presented
Plaintiffs raise a novel issue. In the factual context presented here, may an insurer be subject to liability to a noninsured third party for the negligent performance of its indemnity obligations to the named insured based upon allegations that there is a “special relationship” between the insurer and the third party, as that term has been defined and applied in Biakanja v. Irving, supra, 49 Cal.2d 647 (Biakanja) and its progeny?
Discussion
1. Our Review Is Limited to a Determination as to Whether a Legal Basis for Imposition of an Independent Duty in Negligence Has Been Pled
As already noted, we are reviewing an order of the trial court sustaining a demurrer without leave to amend. “In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. ‘We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.’ [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]” (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Irrespective of the labels attached by the pleader to any alleged cause of action, we examine the factual allegations of the complaint, “to determine whether they state a cause of action on any available legal theory.” (Ellenberger v. Espinosa (1994) 30 Cal.App.4th 943, 947 [36 Cal.Rptr.2d 360], italics added; accord, Saunders v. Cariss (1990) 224 Cal.App.3d 905, 908 [274 Cal.Rptr. 186].) If they do, then the trial court’s order of dismissal must be reversed. (Platt v. Coldwell Banker Residential Real Estate Services (1990) 217 Cal.App.3d 1439, 1444 [266 Cal.Rptr. 601].) If they do not, then the order will be affirmed.
*360 The principal authorities relied upon by AIIC and the trial court do not really address the issue that has been presented by this appeal. For example, in Gantman v. United Pacific Ins. Co. (1991) 232 Cal.App.3d 1560 [284 Cal.Rptr. 188], the court rejected the complaint of the owners of individual units in a planned development project who had sued the insurer that had issued a policy of insurance to the homeowner’s association. Unlike our case, however, the plaintiff owners in Gantman had attempted to recover on the association’s policy in which they were not named as insureds. They sought to recover damages for defects in the roof of the project’s building. The court held that they had no standing to bring the action; only the homeowners association could sue on the policy. The duty to repair and maintain the roof was the association’s responsibility and whatever benefits available under the insurance policy also belonged to the association, not the individual homeowners. (Id. at pp. 1566-1568.) The plaintiff homeowners did not attempt to sue the insurer on the claim that an independent duty owed directly to them had been breached. Thus, the issue raised in the matter before us was not asserted in Gantman.
In C & H Foods Co. v. Hartford Ins. Co. (1984) 163 Cal.App.3d 1055 [211 Cal.Rptr. 765], the controlling shareholders of the plaintiff corporation joined as plaintiffs in an action against the corporation’s insurer for failure to timely pay a claim. The individual plaintiffs claimed a right to join the suit based on their close and controlling interest in the corporation. They were dismissed from the action on the grounds that the only insured was the corporation and they had no standing to assert a claim which belonged to the corporation. Thus, they could not assert claims for bad faith or negligent infliction of emotional distress based on the defendant insurer’s failure to pay a claim submitted by the corporation. (Id. at p. 1068.) Again, however, the plaintiffs had attempted to recover on a claim available only to an insured party; therefore, C & H Foods had no occasion to address the issue before us.
Finally, in Hatchwell v. Blue Shield of California (1988) 198 Cal.App.3d 1027 [244 Cal.Rptr. 249], a wife sought to join her husband in suing their medical insurer on the claim that the insurer had wrongfully denied benefits to her husband. The court held that she had no standing to sue the insurer. The benefits that were the subject of the claim belonged to her husband, not her. This result flowed even though wife was a coinsured under the policy (i.e., entitled to dependent benefits); however, on this particular claim, she was not the claimant and that was enough to deprive her of standing.
None of these cases had occasion to consider the issue that we address and thus they do nothing to assist plaintiffs’ argument. If AIIC owed plaintiffs a *361 duty of care, then they are entitled to sue for its breach. If no such duty is owed, then plaintiffs’ negligence claim necessarily fails. It is therefore necessary for us to address plaintiffs’ contention, in tort, that a duty was owed to them despite the absence of contractual privity.
Our review of the issue raised by plaintiffs’ allegations must begin with the restatement of a fundamental principle. “The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. (Rest.2d Torts, § 281, subd. (a); 6 Witkin, Summary of Cal. Law (9th ed. 1988), Torts, § 732, p. 60.) Whether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court. (6 Witkin, supra, § 748 at p. 83.)” (Bily v. Arthur Young & Co., supra, 3 Cal.4th at p. 397 (Bily).) It therefore may be resolved upon demurrer.
2. Principles Applicable to Imposition of a Duty of Care to Another in the Absence of Privity of Contract
As plaintiffs repeatedly emphasize in their briefs, their claim against AIIC is founded upon the latter’s alleged negligent acts. Plaintiffs do not claim to be parties to the policy issued by AIIC to the HOA, nor do they seek recovery for its breach or for any alleged act of bad faith in respect of the discharge of duties owed under that policy. Rather, plaintiffs seek to recover for damages allegedly sustained by them as a direct and proximate result of AIIC’s breach of a duty of reasonable care, which plaintiffs assert AIIC owed to them.
“[Njegligence is conduct which falls below the standard established by law for the protection of others.” (Rest.2d Torts, § 282.) “Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself.” (Civ. Code, § 1714, subd. (a).) “A judicial conclusion that a duty is present or absent is merely ' “a shorthand statement. . . rather than an aid to analysis .... ‘[Djuty,’ is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.” ’ [Citations.] ‘Courts, however, have invoked the concept of duty to limit generally “the otherwise potentially infinite liability which would follow from every negligent act . . . .” ’ [Citations.]” (Bily, supra, 3 Cal.4th at p. 397.)
Over 40 years ago, our Supreme Court employed a checklist of factors to consider in assessing the existence of a legal duty of one party to *362 another in the absence of a privity of contract between them. In Biakanja, supra, 49 Cal.2d 647, the defendant notary public had prepared the will of the plaintiff’s brother, which left the entire estate to the plaintiff. Due to the defendant’s negligence, the will was improperly attested and could not be admitted to probate. As a result, the plaintiff received only his one-eighth intestate succession share of the estate rather than its entirety as he would have under the will. The court concluded that the defendant owed a duty of reasonable care to the plaintiff, which he had clearly breached. In reaching this conclusion, the court was careful not to declare an unlimited scope of liability in favor of any person who might have received a benefit under a contract but for its negligent performance. The court emphasized that the “end and aim” of the transaction was to benefit the plaintiff and the injury to the plaintiff from the defendant’s negligent actions was clearly foreseeable. (Id. at p. 650.) But this would not always be true. The court said: “The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant’s conduct and the injury suffered, [5] the moral blame attached to the defendant’s conduct, and [6] the policy of preventing future harm.” (Ibid.)
This test has been applied, in cases following Biakanja, to impose a duty of care, and liability in negligence for its breach, in a variety of factual contexts. In both Lucas v. Hamm (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685] and Heyer v. Flaig (1969) 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161], disapproved on another point in Laird v. Blacker (1992) 2 Cal.4th 606, 617 [7 Cal.Rptr.2d 550, 828 P.2d 691], the court concluded that an attorney who undertakes to draft or prepare a will owes a duty not only to the testator but also to the testator’s intended beneficiary to complete that task in a manner which will achieve the testator’s purpose. “When an attorney undertakes to fulfill the testamentary instructions of his client, he realistically and in fact assumes a relationship not only with the client but also with the client’s intended beneficiaries.” (Heyer v. Flaig, supra, 70 Cal.2d at p. 228.) If the attorney’s task is negligently performed and the intended transfer to the designated beneficiary is thereby frustrated, that beneficiary should be allowed to recover for the attorney’s negligence, otherwise, “no one would be able to do so and the policy of preventing future harm would be impaired.” (Lucas v. Hamm, supra, 56 Cal.2d at p. 589.)
In Connor v. Great Western Sav. & Loan Assn. (1968) 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224], the Supreme Court again *363 applied the Biakanja factors to find that a construction lender owed a duty to third party home buyers to discover and prevent major defects in homes the construction of which were financed by the lender. Because of this unique and essential position in the development process it effectively exercised control over the quality of the construction. Similarly, in Roberts v. Ball, Hunt, Hart, Brown & Baerwitz (1976) 57 Cal.App.3d 104 [128 Cal.Rptr. 901], the court found that an attorney, in giving a written opinion to a client which the attorney knew would be transmitted to and relied upon by a third party in dealing with the client, owed a duty of care to such third party in providing the advice contained in the opinion. This was so because the third party’s anticipated reliance upon such opinion was the “end and aim of the transaction.”
In J’Aire Corp. v. Gregory (1979) 24 Cal.3d 799 [157 Cal.Rptr. 407, 598 P.2d 60], the court had before it the claim of a plaintiff lessee who had no contractual relationship with the defendant contractor hired by the lessor but whose injury from the defendant’s negligence was reasonably foreseeable. The plaintiff sued the defendant for damages resulting from the delay in completion of a construction remodel of the leased premises at the Sonoma County Airport where the plaintiff operated its restaurant. The plaintiff’s lessor, the County of Sonoma, had entered into a construction contract with the defendant to make certain improvements to the restaurant premises. The contract did not specify a completion date and thus the defendant contractor was required to complete it within a reasonable time. He negligently failed to do so and, as a result, the plaintiff suffered a loss of business and profits. The plaintiff filed suit alleging that the defendant was liable to the plaintiff for the negligent performance of his contract with the lessor. Applying the Biakanja factors, the court held that these circumstances established a “special relationship” between the plaintiff and the defendant and, even though they were not in contractual privity, the defendant did owe the plaintiff a duty of care. (Id. at pp. 803-804.)
Each of these cases reflects the principle that, as the Biakanja case itself demonstrated, where the “end and aim” of the contractual transaction between a defendant and the contracting party is the achievement or delivery of a benefit to a known third party or the protection of that party’s interests, then liability will be imposed on the defendant for his or her negligent failure to carry out the obligations undertaken in the contract even though the third party is not a party thereto.
3. Subsequent Cases Have Limited the Application of the Biakanja Principles
As the Supreme Court has noted, in the context of a claim for negligently caused emotional distress, “ ‘[Fjoreseeability’ ... ‘is endless because [it], *364 like light, travels indefinitely in a vacuum.’ ” (Thing v. LaChusa (1989) 48 Cal.3d 644, 659 [257 Cal.Rptr. 865, 771 P.2d 814].) “‘[It] proves too much. . . . Although it may set tolerable limits for most types of physical harm, it provides virtually no limit on liability for nonphysical harm.’ [Citations.] It is apparent that reliance on foreseeability of injury alone in finding a duty, and thus a right to recover, is not adequate when the damages sought are for an intangible injury. In order to avoid limitless liability out of all proportion to the degree of a defendant’s negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread, the right to recover for negligently caused emotional distress must be limited.” (Id. at pp. 663-664.) These same concerns have been expressed with respect to losses that were purely economic. “Recognition of a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the exception, not the rule; in negligence law.” (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 58 [77 Cal.Rptr.2d 709, 960 P.2d 513].)
Moreover, foreseeability is but one of the Biakanja factors, although it is a very important one. (Bily, supra, 3 Cal.4th at p. 398.) In and of itself, however, foreseeability is not sufficient. Even where foreseeability is present the Supreme Court has, for policy reasons, declined to allow recovery on a negligence theory. In Bily, the court emphasized that there were three policy concerns that had to be considered before a duty could be found under the Biakanja factors: (1) liability may in particular cases be out of proportion to fault, (2) parties should be encouraged to rely on their own ability to protect themselves through their own prudence, diligence and contracting power, and (3) the potential adverse impact on the class of defendants upon whom the duty is imposed. (Bily, at pp. 399-405; see also Thing v. LaChusa, supra, 48 Cal.3d at p. 668; Nally v. Grace Community Church (1988) 47 Cal.3d 278, 297 [253 Cal.Rptr. 97, 763 P.2d 948] [“Mere foreseeability of the harm or knowledge of the danger, is insufficient to create a legally cognizable special relationship giving rise to a legal duty to prevent harm.”]; Elden v. Sheldon (1988) 46 Cal.3d 267, 274 [250 Cal.Rptr. 254, 758 P.2d 582] [“[P]olicy considerations may dictate a cause of action should not be sanctioned no matter how foreseeable the risk ... for the sound reason that the consequences of a negligent act must be limited in order to avoid an intolerable burden on society.”].)
In Goodman v. Kennedy (1976) 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737], the Supreme Court refused to impose liability to the plaintiffs on the defendant attorney for negligent confidential advice given to his client who thereafter entered into a transaction with the plaintiffs (parties with whom the client dealt at arms’ length) in reliance upon that advice. To *365 impose liability in such a circumstance “would inject undesirable self-protective reservations into the attorney’s counseling role. The attorney’s preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal ‘would prevent him from devoting his entire energies to his client’s interests’ [Citation].” (Id. at p. 344.)
In Bily, supra, 3 Cal.4th 370, the court rejected a claim against an accountant that had conducted audits of a company manufacturing personal computers. Even though the plaintiffs had allegedly made investments in reliance on the audit reports, the court held that an auditor can be held liable in general negligence only to the person or entity contracting for the auditing services.[10]
“In light of the relationships between auditor, client, and third party, and the relative sophistication of third parties who lend and invest based on audit reports, it might also be doubted whether auditors are the most efficient absorbers of the losses from inaccuracies in financial information. Investors and creditors can limit the impact of losses by diversifying investments and loan portfolios. They effectively constitute a ‘broad social base upon which the costs of accounting errors can be spread.’ [Citation.] In the audit liability context, no reason appears to favor the alleged tortfeasor over the alleged victim as an effective distributor of loss. [Citations.] [H] . . . In applying the Biakanja factors . . . , we are necessarily required to make pragmatic assessments of the consequences of recognizing and enforcing particular legal duties. In our judgment, a foreseeability rule applied in this context inevitably produces large numbers of expensive and complex lawsuits of questionable merit as scores of investors and lenders seek to recoup business losses. In view of the prospects of vast if not limitless liability for the ‘thoughtless slip or blunder,’ the availability of other efficient means of self-protection for a generally sophisticated class of plaintiffs, and the dubious benefits of a broad rule of liability, we opt for a more circumscribed approach. In so doing, we seek to deter careless audit reporting while avoiding the specter of a level of liability that is morally and economically excessive.” (Bily, supra, 3 Cal.4th at pp. 405-406, fns. omitted; see also Quelimane Co. v. Stewart Title Guaranty Co., supra, 19 Cal.4th at pp. 57-60.)
As these cases, which have refused to find a special relationship sufficient to impose a duty applying the Biakanja factors, make clear, it is only in a limited number of cases where such a duty will be found. We believe that this is not such a case.
*366 4. The Circumstances of This Case Do Not Establish a Basis for Imposition of a Duty of Care on AIIC Under Biakanja and Its Progeny
In applying the principles discussed above to the facts of this case, we recognize the unique relationship between the owners of the individual condominium units and the homeowners association that they themselves have formed under applicable statutory provisions to manage the common project. We also recognize the tenant in common ownership of the common areas by the individual unit owners. All of this, we assume, AIIC necessarily had to know when it issued its policy to the HOA providing earthquake coverage for the project’s common areas. Given the fact that such common areas included the entire structure of the project (see fn. 4, ante), we also assume that AIIC necessarily knew the owners of the individual units could not use or repair their own units until the structural damage had been repaired.
With those facts as background, we first examine each of the Biakanja factors and then we discuss the public policy considerations emphasized more recently by the Supreme Court in Bily. Superficially, a case can arguably be made that at least some of the Biakanja factors have been satisfied:
(1) The extent to which the issuance of the policy was intended to affect plaintiffs.
By its express terms, the policy, although purchased with plaintiffs’ homeowner assessment funds, covered only thp common areas of the project; in short, the policy was intended to protect the collective or group interests of the plaintiffs, not their individual interests. Plaintiffs do not credibly claim otherwise. The policy was purchased in the name of the HOA, which is the statutorily designated entity formed to protect and enforce the plaintiffs’ collective or group interests. This reflects the statutory mandate for the management of a condominium project (Civ. Code, § 1350 et seq.). Given this circumstance, it can hardly be said that the “end and aim” of the policy’s purchase was the protection of plaintiffs’ individual interests.
(2) The foreseeability of harm to plaintiffs.
While harm to plaintiffs’ individual interests, as well as to their collective ownership interests, might be foreseeable from AIIC’s failure to perform its obligations under the policy, that is not, of itself, sufficient to justify imposition of a duty to the individual plaintiffs. Given the explicitness of the statutory and contractual provisions that govern condominium ownership, as well as the scope of coverage to which AIIC’s policy was expressly limited, plaintiffs could be reasonably expected to take appropriate action to insure and otherwise protect their own interests.
*367 (3) The degree of certainty that plaintiffs suffered injury.
This factor is essentially established by the allegations of the complaint. Until the structure of the project was repaired, plaintiffs were unable to live in, use or repair the interior spaces of their units.
(4) The closeness of the connection between defendant’s conduct and the injury suffered.
The satisfaction of this factor is much more problematic. As we explain below, plaintiffs’ ability, indeed obligation, to obtain insurance to protect their own separate individual interests would have obviated much of the harm they allege they have suffered. That said, however, the complaint does allege that plaintiffs suffered injury as a direct result of AIIC’s acts and omissions.
(5) The moral blame attached to defendant’s conduct.
It is difficult to justify plaintiffs’ claim that any significant moral blame should be attached to AIIC’s conduct. As we conclude in our decision in the related case of Chateau Chamberay Homeowner’s Assn. v. Associated Internat. Ins. Co., supra, 90 Cal.App.4th 335, filed contemporaneously with this decision, the delay in the payment of the insured’s claim was due to AIIC’s reasonable and legitimate assertion of coverage and claim defenses.
(6) The policy of preventing future harm.
While the imposition of a duty to plaintiffs in a case such as this one would certainly encourage greater care by other insurers in future similar cases, it would also have, as we explain below, serious adverse consequences, including the likely loss or reduction of insurance availability for the protection of property held in common ownership.
Even if we were to find that some of the Biakanja factors had been satisfied, however, we still could not conclude that AIIC owed a duty to the plaintiffs. This is so because of the serious policy concerns articulated by the Supreme Court in Bily. As we have already mentioned, Bily raised three policy issues which serve to limit the finding of a duty under the Biakanja factors: (1) the possibility that liability might, in a particular case, be imposed out of all proportion to fault; (2) in a financial transaction presenting a party with a risk of loss, that party should be encouraged to take appropriate steps to protect his or her own interests through prudence, diligence and contracting power; and (3) the potential adverse impact on the class of defendants upon whom the duty is sought to be imposed must be considered. (Bily, supra, 3 Cal.4th at pp. 399-405.)
*368 In this case, the risk of imposition of liability out of proportion to fault is considerable. AIIC issued a policy to cover only specific parts of the condominium project. It did not undertake to protect any individual property or economic interest of the plaintiffs. As noted, we have contemporaneously held that AIIC did not act in bad faith when it asserted coverage and other defenses to the HOA’s claim which delayed for a period of time the completion of the repair of the damage caused by the 1994 Northridge earthquake. Thus, if it were found to have a duty in tort to the plaintiffs it would be under circumstances where its conduct has been found to merit no more than a breach of contract remedy as to the insured party. In other words, its exposure, for the same conduct, would be greater to those parties with whom it did not contract than it would be to the party with whom it did. In addition, who is to say that such unexpected exposure would be limited to the plaintiff individual owners in the project. Why could it not be extended to tenants in the project as well as various lenders and other creditors holding security interests in the property? Their interests have been damaged to the same extent as those of the plaintiffs. We cannot conclude that it is appropriate to impose such a potentially unlimited financial burden on an insurer for doing nothing more than asserting reasonable and legitimate (albeit not entirely successful) defenses to an insured’s claim.
The second policy concern expressed in Bily is also important. AIIC’s policy expressly covered only the common areas of the project. Plaintiffs had the opportunity, and were doubtless at least constructively aware of the need, to purchase their own insurance policy to cover possible loss or damage to their own individual units. This is what the Bily court refers to as the “prospect of private ordering.” (Bily, supra, 3 Cal.4th at p. 402.) “As a matter of economic and social policy, third parties should be encouraged to rely on their own prudence, diligence, and contracting power, as well as other informational tools. This kind of self-reliance promotes sound investment and credit practices and discourages the careless use of monetary resources.” (Id. at p. 403.) Policies of insurance could have been purchased by the plaintiffs that would have protected them from all of the losses they claim to have suffered, including those allegedly occasioned by AIIC’s delay in finally concluding the adjustment of the HOA’s policy. We can find no rational justification for transferring the burden of their failure to do so to an insurer that had no reasonable expectation of the need, or the opportunity, to underwrite that loss.
The third policy concern raised by Bily is perhaps the most significant. In our view, if insurers were exposed to unlimited liability to uninsured parties whom they had not agreed to insure for risks they had no chance to evaluate, and for which they were paid no premium, there would be serious adverse *369 consequences for not only the insurance industry in particular but also for the economic health of society in general. Adoption of the rule advocated by the plaintiffs would place insurers in the position of exposing themselves to unknown (and unknowable) liabilities to unknown parties they had not agreed to insure, all for no compensation. In such circumstances, no rational insurer would issue a policy to a condominium association or, if it were inclined to do so, it would first require the association to demonstrate that each individual owner was adequately covered by appropriate insurance.
Moreover, as one court has explained, “nothing in the Insurance Code prohibits an insurer from deciding to halt or curtail its sale of new policies.” (Wolfe v. State Farm Fire & Casualty Ins. Co. (1996) 46 Cal.App.4th 554, 563-564 [53 Cal.Rptr.2d 878], fn. omitted.) As with most other businesses, insurers have an obligation to avoid needlessly dissipating their reserves. (See, e.g., Austero v. National Cas. Co. (1978) 84 Cal.App.3d 1, 30 [148 Cal.Rptr. 653], disapproved on another point in Egan v. Mutual of Omaha Ins. Co. (1979) 24 Cal.3d 809, 824, fn. 7 [169 Cal.Rptr. 691, 620 P.2d 141].) Facing the imposition of negligence liability they can neither define nor circumscribe, rational insurers will either leave the market or severely limit the availability of insurance. This is not fanciful speculation, but market reality. For example, as a result of massive, unexpected losses from the Northridge earthquake, and the potential for similar losses in the event of a subsequent catastrophe, some insurers in the 1990’s simply refused to issue new homeowners policies in California. The resulting crisis forced the Legislature to create the California Earthquake Authority. (Wolfe v. State Farm Fire & Casualty Ins. Co., supra, 46 Cal.App.4th at pp. 565-566).
Finally, one further comment should be made. The result sought by plaintiffs would constitute a clear anomaly. Although the HO A, the insured party, is not able to recover in tort, but rather is limited to its breach of contract remedy, plaintiffs, who are not insured parties, claim they are entitled to recover for AIIC’s negligence in performing the same contract. In other words, plaintiffs would extend greater rights to uninsured parties than the law grants to insureds. If an insured seeks to recover in tort for an insurer’s mishandling of a claim, it must allege more than mere negligence. As we have previously noted, a breach of the covenant of good faith and fair dealing involves unfair dealing rather than just mistaken judgment. (Careau & Co. v. Security Pacific Business Credit, Inc. (1990) 222 Cal.App.3d 1371, 1394 [272 Cal.Rptr. 387].) “Thus, allegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious *370 and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.” (Id. at p. 1395, italics added; accord, State Farm Fire & Casualty Co. v. Superior Court (1996) 45 Cal.App.4th 1093, 1105 [53 Cal.Rptr.2d 229]; and see Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2000) ¶ 11:213.19, p. 11-47.) We can divine no reason for granting to a noninsured party greater rights in enforcing an insurer’s obligations under its policy than that enjoyed by the insured party.[11]
Conclusion
For these reasons, we believe plaintiffs have not alleged a basis for the imposition of a duty of care upon AIIC in its performance of the obligations due under the indemnity policy issued to the HOA. AIIC’s demurrer was therefore properly sustained. Thus, we must affirm the order of dismissal entered by the trial court.
Disposition
The order of dismissal is affirmed. AIIC shall recover its costs on appeal.
Klein, P. J., and Perluss, J.,* concurred.

The several plaintiffs prosecuting this appeal are Steve Adelman, Charles Chao, Carl Fenig, Claire Finkel, Stephen Goldenberg, Nancy Hauptmann, Helia Hershon, Myma Johannsen, David Moradzadeh, Duro Picakuric, Nikoo Rafat, Maxwell Rosenblatt, Dawn Shaw, Ellis Shephard, Marvin Silverman, Richard Udell, Suzanne Westmoreland, Robert Willard, Joseph Zaragi and Blance Zwem (collectively plaintiffs).

As this case comes to us following the sustaining of a demurrer to the plaintiffs’ second amended complaint, the facts which we recite are based upon the allegations set out in that pleading. As we are bound to do, we accept such allegations as true. We also rely upon undisputed or admitted matters set out in the appellate record presented to us as well as the appellate record in the related pending appeal in Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co. (2001) 90 Cal.App.4th 335 [108 Cal.Rptr.2d 776] (see fn. 5, post). We have taken judicial notice of that record on our own motion.

Plaintiffs’ pleading does not specifically mention structural damage but we infer this fact from a reading of the pleading as a whole.

The common area of the project is defined by Civil Code section 1351, subdivision (b) (“ ‘Common area’ means the entire common interest development except the separate interests therein. The estate in the common area may be a fee, a life estate, an estate for years, or any combination of the foregoing.”), and by sections 1.2, 1.3 and 1.4 of the covenants, conditions and restrictions of the association, and comprises all real property and appurtenant structures located at 2385 Roscomare Road, Los Angeles, California, except (a) the interior finished surfaces of the perimeter walls, floors, ceilings, windows, doors and outlets of the individual living units and (b) the property in the individual living units attached to or located on the interior perimeter surfaces, including cabinets, tiles, floor coverings, carpeting, interior demising walls, wallpaper, paint, light fixtures, toilets, bathtubs and similar items.

By our opinion, filed contemporaneously herewith, in Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co., supra, 90 Cal.App.4th 335, we affirmed the trial court’s summary adjudication order.

On July 22, 1999, the arbitrator made the following binding award in favor of the HOA and against AIIC:
“1. $92,678.00 for the garage slab and $-0- for the columns.
“2. $298,907.00 for reimbursement of out of pocket expenses, including emergency repairs.
“3.' $219,168.00 for floor vibration repairs.
“4. $-0- for exterior walkway.
“5. Interest on the sum of $298,907.00 at the legal rate of 10% from October 1, 1995 until June 23, 1999. The amount of said interest is the sum of $111,509.00.
“6. Defendant, Associated International Insurance Company is to receive a credit of $14,875.00 for arbitration fees which were advanced by defendant on behalf of plaintiff.
“Judgment for plaintiff, Chateau-Chamberay Homeowners Association against defendant, Associated International Insurance Company for $610,753.00, plus interest in the sum of $111,509.00, for a total award of $722,262.00, less a credit of $14,875.00, for a net award of $707,387.00.”

The parties, in stipulating to the resolution of the HOA’s breach of contract claim by arbitration, agreed that the resulting award would be binding and nonappealable.

This was in addition to their ownership as tenants in common of the common areas which were covered under the policy. (Civ. Code, § 1362.)

As already noted (see fn. 2, ante), the operative pleading is plaintiffs’ second amended complaint. There were other preliminary law and motion proceedings involving earlier pleadings which had alleged different causes of action. However, we are not now concerned with those matters. What we have before us is the viability of plaintiffs’ single count of negligence as set out in its second amended complaint.

However, the court did hold that an auditor could be liable for a negligent misrepresentation to third parties who are known to the auditor and for whose benefit the auditor has rendered the audit report.

In addition, the granting of a tort remedy to the plaintiffs based on AIIC’s alleged negligent investigation and adjustment of a claim would run counter to the principles articulated by the Supreme Court in Moradi-Shalal v. Fireman’s Fund Ins. Companies (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58]. After concluding that a private action to enforce the provisions of Insurance Code section 790.03, subdivision (h) would no longer lie (whether brought by an insured or a claimant), the court stated that, “the courts retain jurisdiction to impose civil damages or other remedies against insurers in appropriate common law actions, based on such traditional theories as fraud, infliction of emotional distress, and (as to the insured) either breach of contract or breach of the implied covenant of good faith and fair dealing.” (46 Cal.3d at pp. 304-305, italics added.) This list does not include an action, such as the one plaintiffs seek to pursue, for negligence based on alleged insurer misconduct falling directly within the express proscriptions of Insurance Code section 790.03, subdivision (h)(3), (4) and (5). Such an action is necessarily indistinguishable from the now barred statutory action.

Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.